# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 9, 2009

Charles R. Fulbruge III
Clerk

No. 09-60078
Summary Calendar

SYED ALI ABBAS,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent

Petition for Review of the
Board of Immigration Appeals
BIA No. A99-665-432

Before KING, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Syed Ali Abbas seeks review of a Board of Immigration Appeals (BIA) decision affirming the Immigration Judge's (IJ) finding that Abbas was removable and denying his request for withholding of removal. We DENY the petition for review.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. Factual Background

Abbas is a native and citizen of Pakistan. He entered the United States illegally on December 20, 1999. Immigration officers later discovered Abbas in Victoria, Texas, where he stated that he was a permanent resident alien of the United States. When the immigration officers discovered that Abbas was in the country illegally, they took him into custody. On March 27, 2006, the Department of Homeland Security served Abbas with a Notice to Appear alleging removability under § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA), because he was an alien neither admitted nor paroled in the United States. At a preliminary hearing before an IJ, Abbas conceded that removal was proper because he had entered the United States illegally.[1]

On August 17, 2007, Abbas filed an application for asylum or withholding of removal.[2] He asserted that he fled persecution in Pakistan because of his membership in a particular social group and his political opinions, and that he feared death upon his return.

At his hearing, Abbas testified that, prior to leaving Pakistan, he and his family were persecuted by Sunni factions because of their association with Shia Muslims. Abbas testified that when he was fifteen, he was routinely beaten up by Sunni boys at school. He further testified that in 1997, local Sunnis established a Sipah-i-Sahab Pakistan (SSP) gang that targeted the Shia. According to Abbas, he and a friend were brutally attacked by members of the

---

[1] In his brief on appeal, Abbas asserts that he is a lawful permanent resident of the United States, and that the IJ improperly relied on the Government's evidence that he entered the country illegally because the immigration officers did not testify at the hearing. But Abbas himself testified that he entered the country illegally, and chose not to dispute the Government's evidence in support of this finding. Accordingly, Abbas may not raise this issue on appeal. *See Omari v. Holder*, 562 F.3d 314, 317 (5th Cir. 2009) (failure to raise an issue below prevents this court from addressing it on appeal).

[2] Abbas appealed only the denial of his motion to withhold removal to the BIA. Accordingly, Abbas has waived any separate claim for asylum. *See Thuri v. Ashcroft*, 380 F.3d 788, 793 (5th Cir. 2004) (claims not raised in a petition for review are waived).

SSP because of their affiliation with the Shia. He also testified that his father was attacked twice in 2001 because he was engaged in fundraising for the Shia, and his brother was murdered in that same year because of his participation in Shia activities.

Abbas also stated that the Pakistani government began successfully cracking down on the SSP in 1998, and that the organization is now illegal in Pakistan. Abbas further testified that his participation in Shia activities was minimal, and that he believed he was attacked because his father volunteered for the Shia. Abbas explained that his father is no longer active in Shia fundraising efforts.

In response, the Government introduced a statement made by Abbas at the time he filed his application for asylum and withholding of removal. In that statement, Abbas alleged that his father was attacked in 1997, before he entered the United States. In that same statement, Abbas also alleged that his brother was killed in 1998, before Abbas left Pakistan.[3] In response to these discrepancies, Abbas stated that he must have written the dates down incorrectly because his father told him the whole story over the phone.

The Government also introduced a medical certificate showing that Abbas was treated by a clinic in Pakistan in November 2002. In addition, the Government introduced an affidavit from Abbas's father stating that Abbas was attacked in November 2002, and was still in Pakistan at that time. Abbas again explained that he was confused about the dates and must have written it down wrong.

## II. The IJ and BIA Decisions

The IJ found Abbas removable as charged and denied his application for withholding of removal. The IJ focused on the inconsistencies in Abbas's

---

[3] The Government also introduced Abbas's initial statement that he was abducted by the SSP in 1998, and that the SSP threatened to kill him "just as they killed his brother."

statements and concluded that his testimony was neither consistent nor believable. As an example, Abbas originally stated that his brother was murdered on February 24, 1998, *before* Abbas left for the United States and, indeed, that Abbas was threatened with being "treated like his brother," i.e., murdered. Abbas later filed a different statement alleging that his brother was murdered on February 24, 2001, well after Abbas had left for the United States, meaning that the 1998 threat from the SSP could not have been made. In this context, the IJ found Abbas's explanation that he could not remember the year that his brother was murdered to be implausible.

The IJ also noted that Abbas's own testimony supported a finding that he was not subject to future persecution. Abbas testified that the Pakistani government banned the SSP in 1998, and that the government's efforts to crack down on SSP gang activity were successful. Abbas further testified that his father was no longer participating in Shia activities, and did not fear retaliation. Indeed, he had several family members living without incident in Pakistan at the time of the hearing. While Abbas stated that he would feel compelled to volunteer for the Shia if he returned to Pakistan, the IJ noted that this statement was not credible because Abbas had never participated extensively in Shia activities.

Finally, the IJ concluded that Abbas and his family were victims of gang violence, but were not considered members of a particular social group sharing an immutable characteristic. The IJ further observed that the SSP did not target all Shia; rather, they appeared to target only Shia engaged in fundraising efforts.

In sum, the IJ concluded that Abbas "is lying when he says that he was subjected to persecution by the SSP, and . . . therefore that he has failed to establish any nexus between his own political/religious activities and

persecution." The IJ accordingly denied Abbas's application for withholding of removal.

Abbas appealed the decision of the IJ to the BIA. He argued that the IJ erroneously classified the SSP as a street gang, rather than a "particular social group." Alternatively, Abbas alleged that he was subject to persecution because of his political opinion. Finally, Abbas asserted that the IJ erred by making an adverse credibility determination. He asserted that any discrepancies in his testimony were immaterial, and that other evidence in the record supports a finding that Abbas is entitled to withholding of removal.

The BIA adopted and affirmed the IJ's decision.[4] The BIA found Abbas's testimony was not credible. Further, the BIA found that the other evidence in the record was insufficient to establish a clear probability of persecution. "Without credible testimony establishing either past persecution or a clear probability of future persecution," the BIA concluded that Abbas "ha[d] not established eligibility for withholding of removal." The BIA thus dismissed Abbas's petition for relief. Abbas filed a timely petition for review.

### III. Standard of Review

In a petition for review of a BIA decision, "this court has the authority to review only the BIA's decision, not the IJ's decision, unless the IJ's decision has some impact on the BIA's decision." *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009). In this case, the BIA adopted the IJ's factual findings and conclusions of law; accordingly, we may review the IJ's decision. *Id.*; *Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002).

---

[4] The BIA noted that the IJ appeared to conclude as an alternate grounds for denying Abbas's petition that he would deny the motion for withholding of removal as a matter of discretion. The BIA observed that an IJ may not exercise discretion in denying the withholding of removal, but noted that it was not necessary to reach the issue because of the adverse credibility determination.

We review the BIA's factual conclusion that Abbas is not entitled to withholding of removal for substantial evidence. *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994). Under the substantial-evidence standard, this court may not reverse the BIA's factual findings unless the evidence compels a reversal. 8 U.S.C. § 1252; *Chun*, 40 F.3d at 78. Put another way, Abbas must show that the evidence he presented was so compelling that no reasonable factfinder could conclude against it. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

The INA prohibits the removal of an alien to a country where "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To be eligible for withholding of removal, the alien "must demonstrate a 'clear probability' of persecution upon return." *Roy v. Ashcroft*, 389 F.3d 132, 138 (5th Cir. 2004). "A clear probability means that it is more likely than not that the applicant's life or freedom would be threatened by persecution on account of either his race, religion, nationality, membership in a particular social group, or political opinion." *Id*. To qualify for withholding of removal based on membership in a particular social group, Abbas must show "that he was a member of a group of persons that share a common immutable characteristic that they either cannot change or should not be required to change because it is fundamental to their individual identities or consciousness." *Mwembie v. Gonzales*, 443 F.3d 405, 415 (5th Cir. 2006) (quotation marks and citation omitted).

Under the REAL ID Act, an applicant's testimony, by itself, may be sufficient to sustain the burden of proving grounds for withholding of removal, "but only if the applicant satisfies the trier of fact that his testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii). Abbas argues that the IJ's adverse credibility determination was based upon minor inconsistencies not

6

going to the "heart" of the claim. However, under the REAL ID Act, the IJ may consider:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, *without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.*

§ 1158(b)(1)(B)(emphasis added); *see also* 8 U.S.C. § 1231(b)(3)(C) (making § 1158(b)(1)(B) applicable to determinations of whether an alien has demonstrated that his or her life or freedom would be threatened under § 1231(b)(3)(B)). Thus, whether or not the inconsistencies in Abbas's testimony went to the "heart" of his claim, the IJ was entitled to consider those inconsistencies in determining Abbas's credibility. *Wang*, 569 F.3d at 537-38. In our review of the adverse credibility determination, we must "defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Id.* at 538 (internal quotation marks and citation omitted).

## IV. Merits

Abbas has failed to demonstrate that the evidence compels a reversal of the IJ's factual findings. Abbas was the only witness who testified at the hearing on his application for withholding of removal; accordingly, Abbas's credibility was central to the IJ's decision to deny his application. Reviewing the

inconsistencies in Abbas's testimony, we conclude that Abbas has failed to show that no reasonable fact-finder could conclude that Abbas's testimony lacked credibility. Further, we conclude that the BIA's finding that Abbas failed to provide the court with credible evidence of persecution is supported by substantial evidence.

First, Abbas's testimony was inconsistent on whether his brother was still alive when Abbas came to the United States. In his initial statement to immigration officials, Abbas stated that his brother was murdered in 1998. Abbas further stated that when he (Abbas) was attacked by the SSP in 1998, the SSP threatened to kill him just like they had killed his brother. But Abbas later testified that his brother was murdered by the SSP in 2001, meaning that the 1998 threat could not have been made. These inconsistencies do not simply call into question whether Abbas can correctly remember the date of his brother's death; they call into question whether the 1998 attack really occurred and whether the SSP was responsible for the attack. Accordingly, the IJ's finding that Abbas was not a credible witness was not unreasonable. *See Nakimbugwe v. Gonzales*, 475 F.3d 281, 285 (5th Cir. 2007); *Wang*, 569 F.3d at 538 ("[A]n IJ may rely on *any* inconsistency or omission in making an adverse credibility determination.") (internal quotation marks and citation omitted).

Second, Abbas's testimony was inconsistent on whether he is subject to the threat of future persecution. The IJ noted that the SSP has been outlawed, and the government of Pakistan has begun cracking down on SSP gang members.[5]

---

[5] We also note, as an alternative basis for holding that Abbas is not eligible for withholding of removal, that he failed to demonstrate that he would be subject to persecution by the government or with the government's acquiescence. *See Zhao*, 404 F.3d at 306-07. The evidence introduced at the hearing established that the Pakistani government was taking all necessary measures to outlaw the SSP and prevent sectarian violence. *See Raza v. Gonzales*, 484 F.3d 125, 129 (1st Cir. 2007) ("When an asylum claim focuses on non-governmental conduct, its fate depends on some showing either that the alleged persecutors are aligned with the government or that the government is unwilling or unable to control them."); *see also Khalili v. Holder*, 557 F.3d 429, 436 (6th Cir. 2009) (petitioner not entitled to withholding of

Abbas also testified that the Pakistani government had been successfully working to eliminate the SSP before he left for the United States. He explained that the government's efforts had brought stability back to his neighborhood.[6] Further, the IJ properly noted the absence of any evidence that Abbas himself participated in Shia activities, and that fact that Abbas's father was no longer active in the Shia community. Without a credible showing that he or his family would be active in the Shia community and subject to persecution from the SSP for same, Abbas cannot show that we must set aside the BIA's finding that he is not entitled to withholding of removal. *See Zhang v. Gonzales*, 432 F.3d 339, 345 (5th Cir. 2005). In short, Abbas has failed to show that the IJ and BIA erred by concluding that Abbas would not be subject to persecution if removed to Pakistan.

Finally, Abbas argues that the IJ erred by concluding that the SSP is a gang rather than a particular social group. We need not reach this issue because we have already determined that the IJ's adverse credibility findings were based on substantial evidence, and Abbas has failed to establish a credible threat of future persecution. Abbas has not provided compelling evidence that the IJ erred by denying his petition for withholding of removal.

## V. Conclusion

Because of the strong deference given to the IJ's credibility findings and the absence of evidence requiring a contrary conclusion, we conclude that Abbas has failed to show that he is entitled to withholding of removal. Therefore, we DENY review of the order of the BIA.

---

removal because he presented "insufficient evidence to demonstrate that the government would be unwilling or unable to control" the persons threatening harm).

[6] Abbas also introduced country and international religious reports on the conditions of Pakistan. These reports also support the finding that the Pakistani government banned the SSP and is continuing to crack down on any remaining SSP gang members.